(No. 5660—

ANTIONETTE R. BOCHENEK, Claimant, *v.* STATE OF ILLINOIS, Respondent.

*Opinion filed September 30, 1977.*

BRODY and GORE, Attorneys for Claimant.

WILLIAM J. SCOTT, Attorney General; SAUL WEXLER, Assistant Attorney General, Attorney for Respondent.

POLOS, C.J.

This wrongful death action has been brought by Antionette R. Bochenek, as Administrator of the Estate of Stanley Bochenek, deceased. Claimant alleges that Stanley Bochenek, while mentally incompetent

and a patient at the Chicago State Tuberculosis Hospital, was improperly supervised, in that he was permitted to acquire smoking materials with which he burned himself extensively. Claimant further alleges that those injuries resulted in his death.

Respondent contends that it was not negligent in its care and supervision of the deceased; and that in any event Antionette Bochenek, the wife of the deceased, was contributorily negligent. Respondent also asserts that the deceased's burns did not cause his death.

On June 7, 1968, Stanley Bochenek fell while working at the Chicago Post Office, and sustained a skull fracture. He was admitted to Presbyterian St. Luke's Hospital for treatment. On July 19, 1968, he was transferred to Chicago State Tuberculosis Hospital. His admission diagnosis at Chicago State showed advanced pulmonary tuberculosis, the recent skull fracture, chronic brain syndrome, cirrhosis of the liver, and a history of alcohol addiction.

At about 6:00 a.m. on January 14, 1969, while the deceased was still a patient at Chicago State, he incurred severe burns on the upper part of his body, as a result of his smoking or handling matches and smoking materials. He was found by a hospital attendant with his hospital gown aflame. The attendant also saw smoke coming from the deceased's bedside table. The deceased was treated at Chicago State and attempts were made to have him transferred to specialized burn treatment centers. However, because of overcrowded conditions at the centers, he was not transferred and he died on January 24, 1969.

Antionette R. Bochenek, the wife of the deceased, had visited her husband two days prior to the accident.

She testified that he had been incapable of holding and lighting a cigarette since December, 1968, and that he was unable to smoke without assistance. She said that since December, 1968, he was unable to leave his bed, and was generally in a confused mental condition. She said it was her habit during her visits to give her husband a cigarette, and hold it for him while he smoked. Mrs. Bochenek said that she never left any cigarettes or matches with her husband after Christmas, 1968. She said that she examined his night table on January 12, 1969, as she did on all her visits, and did not find any smoking materials.

She testified that she was never told not to give her husband cigarettes, and that other patients in his room who were able to leave their beds often smoked in the room. She said that ashtrays were placed throughout the room. She talked to her husband immediately after he was burned, but he was unable to tell her how the accident happened.

Stanley Bochenek's daughter, Sandy Plouzek, also visited him on January 12, 1969. She said that his mental condition was poor, and that he was not able to hold a cigarette or matches. She also said that he had been unable to smoke without assistance since December, 1968, and that she never left cigarettes or matches with her father. She testified that she did not see cigarettes or matches in her father's room on her last visit.

Crispina Bullido, the supervising nurse in charge of the deceased at the time of the accident, was called by Claimant as an adverse witness. She testified that she looked in on the deceased at about midnight on the night prior to the accident, and found him resting. She examined the deceased's room after the fire had been

23

extinguished, and observed cigarettes and matches on his night table. She said that she had never before found cigarettes or matches on his night table. She said it was her practice to search the night tables of those patients too ill to smoke without supervision. However, she said she had not searched the deceased's night table in January, 1969, or December, 1968. She said to her knowledge it was not hospital policy to search the night tables of those patients who were unable to smoke without supervision.

Aldona Simonaitis was the head nurse at Chicago State Hospital at the time of the accident. She testified it was the rule of the hospital that no smoking was permitted in beds, and that patients not confined to their beds were not allowed to smoke in their rooms.

She said she instructed all her nurses and aids to remove cigarettes and matches from all bedridden patients, and that this was a standard rule at the time of the accident, posted on a bulletin board at the nursing station on the floor.

In January, 1969, she would enter the deceased's room two to three times daily. She said the deceased was confused, and was permitted to smoke only when assisted by a hospital aid. His cigarettes, and those of other bedridden patients, were kept in the nursing station outside his room.

Dr. Herbert Neuhaus, the Medical Director and Superintendent of Chicago State Tuberculosis Sanitarium at the time of the accident, was called as a witness by Respondent. He testified that it was hospital policy that there was to be no smoking in patients' rooms; but that bedridden patients could smoke in their beds if there was a hospital attendant present. Debilitated patients were also prohibited from keeping cigarettes

24

or matches at their bedsides.

Dr. Neuhaus further testified that it was hospital policy for nurses to search the bedsides of bedridden patients for smoking materials, and that such searches were to be made "as often as possible, at least once each shift."

Dr. Jerome J. Kearns, a pathologist for the Coroner of Cook County, examined the body of the deceased. He determined that the primary cause of death was toxemia, and that in his opinion the toxemia resulted from the burns suffered by Stanley Bochenek on January 14, 1969.

The standard of care owed by the State to patients in its hospitals was set forth in *Karulski v. Board of Trustees, 25 Ill.Ct.Cl. 295.* There we said,

"A hospital is not an insurer of a patient's safety, but owes the patient the duty of protection, and must exercise reasonable care as the patient's known condition may require... The extent and character of the care which a hospital owes its patients, depends on the circumstances of each particular case. However, this rule is limited by the rule that no one is required to guard against or take measures to avert that which a reasonable person under the circumstances would not anticipate as likely to happen."

In order to recover for the death of the deceased, Claimant must prove that the State breached this standard of care; that the deceased was not contributorily negligent; and that the State's negligence proximately caused his death.

The Claimant has established that Chicago State Hospital did not use reasonable care in supervising the deceased. Hospital personnel were shown to have violated hospital rules calling for frequent searches of bedridden patients for smoking materials. Dr. Neuhaus, the superintendent of the hospital, testified that it was hospital policy for nurses to search the bedsides of bedridden patients for smoking materials at least

once each shift. Aldona Simonaitis, the head nurse at the hospital, also stated that she had instructed her nurses to remove cigarettes and matches from all bed-ridden patients. Yet Crispina Bullido, the nurse in charge of the deceased at the time of the accident, testified that she had not searched the deceased's nightstand for smoking materials during December, 1968 or January, 1969. She had looked in on the defendant approximately six hours prior to the accident, and found him sleeping. Had she followed hospital policy and searched his nightstand for smoking materials, it appears that the accident would not have occurred.

The Court therefore concludes that Claimant has established the negligence of Respondent, and that such negligence was the proximate cause of the injury to Claimant. It is also clear that the deceased was mentally incompetent at the time of the accident, and was unable to care for himself. We therefore find that he was incapable of contributory negligence.

The Court further finds that the weight of the evidence establishes that the burns suffered by the deceased on January 14, 1969, proximately caused his death.

Respondent contends that Antionette R. Bochenek, the wife of the deceased, was contributorily negligent. Respondent relies upon the testimony of Aldona Simonaitis, who said that Mrs. Bochenek told her that she had given smoking materials to the deceased two days before the accident. Mrs. Bochenek denied that this conversation ever took place, and denied that she gave the deceased smoking materials.

It is not a defense to a wrongful death claim that the death of the deceased was caused in part by the

contributory negligence of one or more beneficiaries of the deceased. A next of kin found to be negligent, however, may not share in any award of damages. *Sheley v. Guy, 29 Ill.App.3d 361, 330 N.E.2d 567.*

Here, even if Mrs. Bochenek did give the deceased smoking materials during her visit of January 12, such an act was not a proximate cause of his injury. It was hospital policy to search the bedsides of mentally confused and bedridden patients at least once each shift, and had this rule been followed the smoking materials given to Mr. Bochenek would certainly have been discovered by hospital personnel before January 14, the date of the accident. We therefore find that even if Mrs. Bochenek did give smoking materials to the deceased two days before the accident, her action was not a proximate, contributing cause to his injury.

It is quite clear from the record that the deceased was in very poor physical condition at the time of the accident. He was suffering from tuberculosis, cirrhosis of the liver, a recent skull fracture, and chronic alcoholism. Although he was six feet tall, he weighed only 95 pounds. He was 54 years old, and prior to the accident was unable to work because of his physical condition. When he was able to work, he earned approximately $65.00 per week.

Under the "Wrongful Death Act," any recovery is to be distributed by the Court to each of the widow and next of kin of the deceased, in proportion to their relative dependence upon the deceased. Here the deceased left surviving a widow and two adult children, all of whom were in part dependent upon him for support.

Given the age and deteriorated physical condition of the deceased at the time of the accident, and the minimal contribution he was capable of making to his

family, the Court finds that the sum of $5,000.00 should be awarded to the Claimant herein, to be distributed as follows:

(a) the sum of $3,500.00 to Antionette Bochenek, the widow of the deceased; and

(b) the sum of $750.00 to each of Paul Bochenek and Sandra Bochenek Plouzek, the adult children of the deceased.